# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-06-00670-CR

**Antoine Sherman Smith, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF BELL COUNTY, 27TH JUDICIAL DISTRICT
### NO. 59350, HONORABLE RICK MORRIS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Antoine Sherman Smith of two counts of aggravated sexual assault of a child and assessed punishment at consecutive terms of life in prison. Tex. Penal Code Ann. § 22.021(a)(1)(B)(i)(ii), (a)(2)(B) (West Supp. 2006). In a single issue on appeal, Smith contends that the evidence is factually insufficient to support his conviction. We affirm.

In July 1995, Smith began dating Tamara Wakeley. Her oldest daughter, A.H., testified that Smith began touching her "below [her] waist" and "underneath [her] shirt" not long thereafter. A.H.'s younger sister, S.H., testified that Smith began touching S.H. near her genitals sometime before her mother married Smith in October 1995. A.H. and S.H. testified that they were

six years old and four years old, respectively, when Smith began touching them.[1]  A.H. estimated that Smith touched her sexually on more than one hundred occasions.

The girls testified that the abuse continued while they moved with Smith from Killeen to his military postings in Germany and Massachusetts and continued after they returned to Killeen. S.H. testified that she began having sex with Smith in Germany.  She also testified that while they were in Massachusetts, she saw Smith in A.H.'s bed, touching her genitals and kissing her.  A.H. testified that after they returned to Killeen, she succumbed to Smith's pressure and had sexual intercourse with him "three or four" times in May 2002.  She also had oral sex with Smith, and he continued to have oral and vaginal sex with S.H.

In May 2002, A.H. told Wakeley that Smith had been touching her.  A.H. did not tell her about having sex with him.  A.H. testified that Smith last touched her in May 2002, shortly after the disclosure.  Wakeley testified that, when she confronted Smith in May 2002, he admitted touching A.H. but not the other two daughters.  Wakeley testified that he begged her not to tell anyone about it.  She also testified that A.H. had been clashing with her parents about her curfew. When they gave her more freedom, she was less belligerent.  A.H. was thirteen years old at the time.

---

[1] The youngest of Wakeley's three daughters, whose initials are also A.H., also testified that Smith sexually abused her.  The jury was instructed to acquit on the count concerning her based on lack of venue because she testified only about events occurring in Germany.  To avoid confusion regarding the girls' initials, we will not detail her testimony and will focus on that of the older sisters.

Smith was transferred to Iraq in March 2003. In September 2003, S.H. made an outcry to her mother. Wakeley then contacted military and civilian authorities. Wakeley testified that during a telephone conversation, Smith admitted having sex with all three of her daughters.[2]

Killeen Police Detective Noreen Faes interviewed each of the daughters. She testified that the girls were somewhat reluctant to discuss the accusations (the youngest initially denied that any assault occurred, although she later recanted this denial). Faes testified that the girls' testimony did not raise red flags—they did not say that they wanted Smith to be locked up for life, to go to jail, to be kicked out of the army, or to divorce their mother. However, she said that they did tell her that they wanted the abuse to stop.

Alice Lindner, a sexual assault nurse examiner at Scott and White Hospital, examined A.H. and S.H. in September 2003. Lindner testified that she did not find any physical evidence of sexual abuse on either girl, but given that several months had passed since the last alleged sexual activity (May 2002 for A.H. and March 2003 for S.H.), she did not expect to find any.

April Brown, a friend of Smith's in the army, testified that Smith told her he had molested A.H. and S.H. While they were in Iraq together in September 2003, Smith told her that his marriage was in trouble. Brown testified that Smith said, "I molested my girls." Smith asked Brown not to tell anyone. Brown reported the conversation to her first sergeant.

---

[2] In her statement to the police, given after she confronted Smith with S.H.'s accusation, Wakeley swore that Smith denied A.H.'s initial accusation and that, after S.H.'s accusation, Smith admitted to having sex with only the older daughters. On cross-examination, Wakeley testified that these aspects of her statement to the police were false.

3

E-mails between Brown and Wakeley and between Wakeley and Smith were admitted into evidence. For the most part, the e-mails make only oblique references to some unnamed action that Smith committed that was very hurtful to the girls and to Wakeley. The only direct statement is in a message to Brown from Wakeley, who wrote that Smith "has been molesting my girls since we married and reaped [sic] my oldest (14) three times." In an e-mail response, Brown discussed the conflicting emotions that victims of sexual assault by a family member may feel.

Diane Campbell, a former social worker for Child Protective Services, testified for the State as an expert. Campbell did not meet with either victim or Wakeley, but testified more generally. She testified that sometimes child victims "get confused on the details or the times or specific events because they've spent the last several years trying not to think about it." Later, she testified that "getting confused on some details wouldn't be unusual at all."

The jury convicted Smith on two counts of aggravated sexual assault, finding that on or about September 1, 2003, Smith did "intentionally or knowingly cause the penetration of the mouth[s] and female sexual organ[s] of [both A.H. and S.H.] by the defendant's sexual organ" when the girls were younger than fourteen years old.

Smith challenges the factual sufficiency of the evidence. Specifically, he contends that the evidence is insufficient because A.H. and S.H. were unable to recall certain details of the assaults (such as the time of day and the room in which the assaults occurred), that e-mails introduced by the State were not admissions of anything more than being a bad husband and father, that no physical evidence of assault was discovered during the examinations of A.H. and S.H., and that he was not identified as the assailant.

4

In a factual sufficiency review, we view all the evidence in a neutral light. *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006). We then determine whether the evidence supporting the verdict is so weak that the verdict is clearly wrong and manifestly unjust or whether the verdict is against the great weight and preponderance of the conflicting evidence. *Id*. at 415. We may reverse only if we find an objective basis in the record on which to conclude that the great weight and preponderance of the evidence contradicts the jury's verdict. *Id*. at 417. The evaluation of the credibility of a witness is within the sole province of the jury. *Cain v. State*, 958 S.W.2d 404, 408-09 (Tex. Crim. App. 1997). Convictions for aggravated sexual assault of a child may be supported by the victim's uncorroborated testimony. Tex. Code Crim. Proc. Ann. Art. 38.07 (West 2005); *Perez v. State*, 113 S.W.3d 819, 838 (Tex. App.—Austin 2003, pet. ref'd).

Smith argues that the inability of A.H. and S.H. to recall certain details about some of the assaults renders the evidence factually insufficient. He points to A.H.'s testimony regarding the first time he unsuccessfully attempted to have sexual intercourse with her. On cross-examination, A.H. testified that she could not remember whether it occurred in a bathroom or bedroom, who was home at the time, what month it was, or whether it occurred during the day or night. She asserted, "It happened on so many occasions I really can't remember stuff like that." S.H. was unable to recall similar details about the first time she had intercourse with Smith. She could not recall if anyone else was home, whether it was during the school year, or in what room it happened. She testified that the "many" other times they had sex occurred sometimes in Smith's room and sometimes in hers, but could not recall if anyone else was home during any of those times.

This testimony does not require reversal of the judgment. At the time of trial, eleven years had passed since the first alleged touching incident, at least eight years had passed since the first assault, and more than three years had passed since the last alleged assault. The girls' inability to recall details of certain events (among many) occurring several years earlier related, at most, to their credibility and to the weight the jury could give to their testimony. Campbell suggested that some child victims cannot or choose not to remember details of sexual abuse committed upon them, and that a child who cannot recall specifics is not necessarily lying. The testimony of A.H. and S.H. was consistent, describing sexual abuse spanning almost seven and eight years, respectively. Each testified that Smith committed the elements of the charged offenses. We are not persuaded that the girls' lack of memory regarding certain details of particular assaults renders the evidence supporting the convictions insufficient.

Smith's remaining arguments are less persuasive. The absence of physical evidence is inconclusive because of the passage of time between the alleged assaults and the examinations. Nurse Lindner testified that such lack of physical evidence was not inconsistent with past sexual abuse. Although Smith never admitted in his e-mails that he sexually abused the girls, the jury could assess his comments about his "stupidity and immaturity" and "hurting" people in the context of the other evidence—including the fact that he wrote such comments in response to Wakeley's e-mail that she had "had a little chat with [S.H.] today and I know all about what happened in the past. [The youngest daughter] says she does not remember 'it' happened to her but the other two said that this has been happening since before Germany." The girls identified Smith as their assailant. Significantly, the testimony of Wakeley and Brown about Smith's admissions of the offenses stands

6

unrebutted.  Wakeley testified that during a phone conversation with Smith, he admitted to having sex with all three girls.  Brown testified that Smith told her that he had "molested" his girls.

Having reviewed all the evidence in the record in a neutral light, we cannot say that the great weight or preponderance of the evidence contradicts the jury's verdict.  Smith's point of error is overruled.

Affirmed.

_____

G. Alan Waldrop, Justice

Before Justices Patterson, Pemberton and Waldrop

Affirmed

Filed:   August 22, 2007

Do Not Publish